UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **PEGASUS EQUINE GUARDIAN ASSOC.** | : | **DOCKET NO. 17-cv-980** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **UNITED STATES ARMY, ET AL.** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is a Motion for Partial Preliminary Injunction filed by plaintiff Pegasus Equine Guardian Association ("Pegasus"). Doc. 43. Defendants, the United States Army and Brigadier General Gary M. Brito in his official capacity as Commanding General of Fort Polk (together "the Army"), oppose the motion. Doc. 51. Also before the court is the Army's Motion in Limine to Exclude Expert Testimony and Unproduced Evidence from Preliminary Injunction Hearing [doc. 57] which plaintiff opposes. Doc. 65.

This matter has been referred to the undersigned for the purpose of issuing a Report and Recommendation. Doc. 47. A preliminary injunction hearing was held on January 30, 2018. Doc. 60. Plaintiff and defendants have filed post-hearing memoranda. Docs. 64, 66, respectively. The motions are now ripe for decision. For the following reasons, **IT IS RECOMMENDED** that plaintiff's Motion to Submit Extra-Record Evidence [doc. 49] be **GRANTED** insofar as that material is considered in our review of the request for injunctive relief, and that the defendants' Motion to Strike and Motion in Limine [docs. 52, 57] be **DENIED**. **IT IS ALSO RECOMMENDED** that plaintiff's Motion for Partial Preliminary Injunction [doc. 43] be **DENIED.**

# I.
## BACKGROUND

This litigation arises from the Army's plan to remove undomesticated horses from Fort Polk and surrounding areas. Doc. 3, att. 1, p. 1. Pegasus filed suit in the Middle District of Louisiana to prevent the Army from removing any horses until it conducts a more thorough review of its plan under the National Environmental Protection Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, and the National Historic Preservation Act ("NHPA"), 54 U.S.C. § 300101 *et seq.* Doc. 3, att. 1, pp. 22–23. The case was subsequently transferred to this court. Doc. 25.

For more than two decades, the Army has sought solutions to safety issues presented by "trespass horses" on Fort Polk and the Peason Ridge area where the Army conducts training operations. *See* JRTC-E-002984.[1] According to the records presented the horses have caused traffic accidents [JRTC-F-000004-72, 98–259], entered business and residential properties [JRTCJRTC-B-000038, -56, -157–180; JRTC-F-000098-259], and prevented soldiers from conducting training exercises or threatened their safety during operations. JRTC-B-000055, -181–191; JRTC-F-000082, -98–259. The Army conducts "live fire and maneuver" operations in the training areas [JRTC-B-000100], which have "concertina wire, earthworks such as tank ditches," and other man-made obstacles [JRTC-B-0086] that put the horses "at continuous[] risk of injury or death." JRTC-B-000057. Some horses are also malnourished due to inadequate forage [JRTC-B-000112] and may spread infectious diseases. JRTC-B-000054.

In 2015, after previous efforts failed,[2] the Army again considered how to remove the horses from training areas. JRTC-B-000022. The current plan, by which it seeks to eventually remove

---

[1] Citations beginning with "JRTC" refer to the administrative record, maintained on disc in the clerk's office of the presiding judge.

[2] The Army decided to remove the horses after publishing a report in September 1999 detailing the problems. JRTC-E-003524–3525. In 2000, those removal efforts were the subject of litigation in the Eastern District of Louisiana that was resolved. *Coal. of La. Animal Advoc. v. U.S. Dept. of Agric.*, 2:00-cv-03539, docs. 26, 27, 36, and 37 (E.D. La.

all horses from the training areas, was implemented in August 2016. JRTC-A-000001–6. From October 2016 through January 2018, the Army removed more than one hundred horses and placed them with non-profit organizations. Doc 51, att. 2, pp. 3–4. On January 19, 2018, it estimated that between five hundred and seven hundred horses remained on the base and training grounds. Doc. 51, att. 2, p. 7. The Army expects to be able to capture only between ninety and one hundred twenty horses in the next six to nine months and that it will take approximately three years to remove all the horses. *Id.* at 6–7.

Pegasus asks the court to consider extra-record evidence when determining whether to grant a preliminary injunction. *See* doc. 49. As we note above the Army filed a motion to strike and motion in limine asking that we exclude any evidence that does not appear in the administrative record. Thus, before we reach the issue of whether to enjoin the Army from removing horses, we examine what evidence we may consider.

## II.
## LAW & ANALYSIS

### A. *Extra-Record Evidence*

This matter comes before the court as a review of a final agency action under the Administrative Procedure Act. *See* doc. 1. In the Fifth Circuit the "record rule" is a "bedrock principle of judicial review that a court reviewing an agency decision should" consider only the administrative record but not evidence presented for the first time in the court proceeding. *Goonsuwan v. Ashcroft*, 252 F.3d 383, 390 n. 15 (5th Cir. 2001) (citation omitted). There are several recognized exceptions where the court may consider extra-record evidence, however,

---

2000), *aff'd* no. 01-31361 (5th Cir. 2003). Ten years later, the Army attempted to reduce the horse population through sterilization and under a public capture program but neither effort was successful. JRTC-E-003561–3895.

including "in cases where relief is at issue, especially at the preliminary injunction stage." *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989).

The Army has moved the court to exclude plaintiff's extra-record materials and the testimony presented at the hearing. Docs. 52, 57. Defendants contend that the court's consideration of extra-record evidence would "subvert the entire administrative review process." Doc. 57, att. 1, p. 3. They state that "[t]estimony that merely disputes the substance of analysis in the Administrative Record is inadmissible" and that extra-record cannot be used "to determine the correctness or wisdom of [an] agency's decision." *Id.* at 4 (citations omitted). Defendants also argue that the court should focus solely on the administrative record because Pegasus "has not identified an applicable exception to the record rule" which allows the court to consider the testimony and evidence presented at the hearing. *Id.* Pegasus opposes the Army's motion and asserts that several of the record-rule exceptions derived from *Esch* allow the court to consider all of its extra-record evidence, including the testimony offered at the injunction hearing. Docs. 55, 65.

Here, the court is asked to grant a preliminary injunction in favor of plaintiff. Under the record rule exceptions, "in cases where relief is at issue, especially at the temporary injunction stage," we may consider extra-record evidence to aid us in reaching our decision. *Esch*, 876 F.2d at 991. Therefore, Pegasus's Motion to Introduce Extra-Record Evidence should be granted, but only insofar as these materials are considered for the purposes of the request for a preliminary injunction below, and defendants' Motion in Limine and Motion to Strike should be denied. We defer consideration of Pegasus's other grounds for inclusion of extra-record evidence until our adjudication of the merits of the case.

### B. *Motion for Partial Preliminary Injunction*

A preliminary injunction is an "extraordinary remedy" and will only be granted if the party seeking it proves (1) a substantial likelihood of success on the merits, (2) a substantial threat that failure to grant the order will result in irreparable harm, (3) the threatened injury outweighs any damage that the injunction will cause defendants, and (4) that the injunction will not have an adverse effect on the public interest. *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 536–37 (5th Cir. 2013) (citation omitted). If the plaintiff fails to prove *any one* element then the motion will be denied. *Enter. Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (emphasis added).

The purpose of a preliminary injunction is to preserve the status quo until a full trial on the merits. *Univ. of Tex. v. Camenisch*, 101 S.Ct. 1830, 1834 (1981). Because a preliminary injunction is of "limited purpose" and frequently requires that the court render a decision quickly, the "procedures … are less formal and evidence is less complete than in a trial on the merits." *Id.* Therefore, the movant need not prove his case in full at the preliminary hearing and the court is not bound by its prior conclusions of law or findings of fact when deciding the merits. *Id.* (citations omitted).

According to Pegasus, a preliminary injunction to prevent the Army from removing horses "is urgently necessary … to avoid an irrevocable change to the environment and historic and cultural resources at Fort Polk, and potential substantial harm to the wild horses that live there." Doc. 43, p. 1. Regarding the second element, Pegasus argues in its post-hearing memorandum that its members will suffer irreparable harm if all of the horses are removed. Doc. 64, p. 8. It asserts

that the testimony of Rickey Robertson[3] establishes that its members, including Robertson, will lose the last remnant of their cultural heritage and their "use and enjoyment of the landscape" will be diminished if the Army "removes all the horses from Fort Polk and Kisatchie National Forest."[4] *Id.* at 8–9.  It also argues that if the horses are removed then the processes that defendants are required to follow under the Administrative Procedures Act ("APA") "may become moot" because the environment and cultural or historic landscape at Fort Polk would be destroyed.  *Id.* at 10.  Pegasus relies on the testimony of Dr. Thomas King[5] "that Peason Ridge may be a historic landscape, and the horses appear to contribute to that landscape."  *Id.* at 11.  He stated that "when people lose big chunks of things that they view as sustaining their cultural identity" they suffer psychological damage.  *Id.* at 10.

Pegasus fails to satisfy the necessary second element because it has not offered sufficient evidence that its members will suffer irreparable harm if the injunction is not granted.[6]  At the hearing it called five witnesses, including Robertson and Stacey Alleman-McKnight.[7]  Doc. 62, p. 16.  Robertson testified that he will lose the last remnant of his cultural heritage if all of the horses

---

[3] Robertson is a Pegasus board member and Heritage Family member.  Descendants of the settlers of the Peason Ridge area are referred to by the Army as "Heritage Families."  Doc. 43, att. 11, p. 14.  During World War II, part of the area became the military base now known as Fort Polk and the residents were relocated.  *See id.* at 13–14.

[4] Fort Polk is located in Vernon Parish, Louisiana.  *See* Land Ownership and Vicinity Map, doc. 48, p. 9.  The Kisatchie National Forest is north of Fort Polk and includes the area known Horse's Head.  *See id.* at 9, 10.

[5] Dr. King holds a Ph.D. in Anthropology and has "worked in and outside government for some fifty years, specializing in the interpretation and application of the NHPA [and] aspects of the NEPA."  Doc. 43, att. 3, pp. 3, 6.  At the hearing, plaintiff offered him "as an expert in historic preservation [and] … on standard government practices under the [NHPA]."  Doc. 62, p. 18.  The government declined to traverse as to his qualifications as an expert.  Doc. 62, pp. 18–19.  The court allowed Dr. King to testify over the government's objection that his testimony was irrelevant and outside the administrative record.  *Id.*  For purposes of determining whether to grant the preliminary injunction we have considered his testimony.  However, we withhold ruling on whether to accept him as an expert until our adjudication of this case on the merits.

[6] Pegasus has standing only to the extent of its members' interests.  *See Summers v. Earth Island Inst.*, 129 S.Ct. 1142, 1149.  It does not have standing on behalf of the herd, much less individual horses, because it "has not differentiated its concern [about the treatment of the horses] from the generalized abhorrence other members of the public may feel at the prospect of cruelty to animals."  *Animal Lovers Volunteer Ass'n Inc. (A.L.V.A.) v. Weinberger*, 765 F.2d 937, 939 (9th Cir. 1985).

[7] Mrs. Alleman-McKnight is the Director of Animal Control in St. Landry Parish, Louisiana.  Doc. 62, p. 45.  At the hearing, plaintiff offered her "as an expert in horse rescue and relocation in the State of Louisiana."  *Id.* at 46.

are removed. *Id.* at 38. Alleman-McKnight testified that she heard "that [the Army has] already gotten rid of [between 200 and 300 horses]. The original estimate … was 700 head of horses. So that means there's only 500 left." *Id.* at 55. The Army did not cross-examine Alleman-McKnight as to her estimates [*see id.* at 62–65] nor did they call any witnesses of their own.

Pegasus, however, concedes that "the horse-elimination program will be carried out on Army-owned land only" [doc. 54, p. 7] and, therefore, horses will remain in the Kisatchie National Forest after all of the horses are removed from Fort Polk. Additionally, Pegasus has not provided any proof that the Army will remove all of the horses from the base and other training grounds before this case is resolved on the merits. Accordingly, as the defendants assert, Pegasus has not shown a substantial likelihood of irreparable injury because it is unable to prove that failure to grant its requested relief would result in an irreversible injury to the cultural heritage or historic landscape described. Because plaintiff fails to meet its burden under this element we need not address the other requirements to decide that the preliminary injunction should be denied.

### III.
#### CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that plaintiff's Motion to Submit Extra-Record Evidence [doc. 49] be **GRANTED** insofar as that material is considered in our review of the request for injunctive relief, and that the defendants' Motion to Strike and Motion in Limine [docs. 52, 57] be **DENIED**. **IT IS ALSO RECOMMENDED** that plaintiff's Motion for Partial Preliminary Injunction [doc. 43] be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and

Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 9th day of March, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE